**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| UNITED STATES OF AMERICA,<br><br>      v.<br><br>AMIT BHARDWAJ,<br>SRINIVASA KAKKERA, and<br>ABBAS SAEEDI,<br><br>          Defendants. | 22 Cr. 398 (GHW) |

## DEFENDANT SRINIVASA KAKKERA'S OMNIBUS REPLY
## IN FURTHER SUPPORT OF HIS PRETRIAL MOTIONS

BRADLEY ARANT BOULT CUMMINGS LLP
Elisha J. Kobre
1445 Ross Avenue
Suite 3600
Dallas, Texas 75202

*Counsel for Srinivasa Kakkera*

## <u>TABLE OF CONTENTS</u>

TABLE OF CONTENTS...................................................................................................... i

TABLE OF AUTHORITIES ............................................................................................ iii

PRELIMINARY STATEMENT ........................................................................................ 1

I.    THE COURT SHOULD ORDER THE GOVERNMENT TO PROVIDE A BILL OF PARTICULARS. ........................................................................................ 5

    A.    The Court Should Order the Government to Provide a Bill of Particulars as to the Neophotonics Insider Trading Conspiracy Alleged in Count Seven. ..................... 6

        1.    The Nature, Substance, and Timing of the MNPI Mr. Kakkera Allegedly Received from Mr. Bhardwaj. ....................................................................... 6

        2.    The Identities of Unindicted Co-Conspirators the Government Intends to Rely Upon at Trial. ....................................................................................... 9

        3.    The Particular Trades the Government Intends to Rely Upon at Trial to Prove an Alleged Insider Trading Conspiracy. ................................................................ 11

        4.    Any "Personal Benefit" To the Alleged Tipper as a Result of the Tip. ............. 12

    B.    The Court Should Order the Government to Provide a Bill of Particulars as to the Obstruction of Justice Conspiracy Alleged in Count Fourteen. .......................... 13

II.    THE COURT SHOULD ORDER THE GOVERNMENT TO IMMEDIATELY PROVIDE ALL EXCULPATORY EVIDENCE, INCLUDING ALL INFORMATION RELATING TO MR. BHARDWAJ'S DATE OF AWARENESS. .............................. 15

III.    THE COURT SHOULD SEVER MR. KAKKERA FROM CO-DEFENDANT SAEEDI FOR TRIAL. ..................................................................................................... 17

IV.    THE COURT SHOULD SUPPRESS THE 11 MONTHS OF CELL SITE DATA SEIZED BY THE GOVERNMENT THROUGH AN OVERBROAD WARRANT LACKING PROBABLE CAUSE................................................................................ 20

V.    THE COURT SHOULD DISMISS COUNT FOURTEEN OF THE INDICTMENT.. 23

VI.    THE GOVERNMENT MUST REVIEW AND PRODUCE *BRADY* AND *GIGLIO* MATERIAL IN THE POSSESSION OF THE SEC. ................................................... 27

VII.  THE COURT SHOULD REQUIRE THE GOVERNMENT TO PROVIDE NOTICE UNDER FEDERAL RULE OF EVIDENCE 404(B) NOT LESS THAN 60 DAYS BEFORE TRIAL. ....................................................................................................... 29

CONCLUSION.................................................................................................................... 30

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Russell v. United States*,
369 U.S. 749 (1962)...................................................................................................24

*United States v. Aguilar*,
515 U.S. 593 (1995)..............................................................................................24, 25

*United States v. Aleynikov*,
737 F. Supp. 2d 173 (S.D.N.Y. 2010).................................................................24, 25

*United States v. Attanasio*,
870 F.2d 809 (2d Cir. 1989).....................................................................................18

*United States v. Benjamin Chow*,
17 Cr. 667 (GHW) (S.D.N.Y. February 9, 2018) .............................................7, 8, 28

*United States v. Bin Laden*,
92 F. Supp.2d 225 (S.D.N.Y. 2000).........................................................................10

*United States v. Blakstad*,
No. 19 CR. 486 (ER), 2020 WL 5992347 (S.D.N.Y. Oct. 9, 2020) ..........................23

*United States v. Bortnovsky*,
820 F.2d 572 (2d Cir. 1987)..................................................................................5, 10

*United States v. Cervone*,
907 F.2d 332 (2d Cir. 1990).....................................................................................18

*United States v. Chow*,
17 Cr. 667 (GHW) (S.D.N.Y. May 21, 2019) ............................................................8

*United States v. Collins*,
409 F. Supp. 3d 228 (S.D.N.Y. 2019)......................................................................28

*United States v. Contorinis*,
09 Cr. 1083 (RJS*), slip op.* at 1 (S.D.N.Y. May 5, 2010)...................................6, 7

*United States v. Cruikshank*,
92 U.S. 542 (1875)....................................................................................................25

*United States v. Falso*,
544 F.3d 110 (2d Cir. 2008)......................................................................................22

*United States v. Feola*,
    651 F. Supp. 1068 (S.D.N.Y. 1987)...................................................................11

*United States v. Genao*,
    343 F.3d 578 (2d Cir. 2003)........................................................................26

*United States v. Gupta*,
    848 F. Supp. 2d 491 (S.D.N.Y. 2012) (Rakoff, J.) ........................................11, 27, 28

*United States v. Haim*,
    218 F. Supp. 922 (S.D.N.Y. 1963) ................................................................17

*United States v. Hernandez*,
    No. 09 CR 625 (HB), 2010 WL 26544 (S.D.N.Y. Jan. 6, 2010) ...........................23

*United States v. Jespersen*,
    65 F.3d 993 (2d Cir. 1995)..........................................................................26

*United States v. Lech*,
    161 F.R.D. 255 (S.D.N.Y. 1995) ...............................................................18, 19

*United States v. Levy*,
    2013 WL 664712 (S.D.N.Y. Feb. 25, 2013) ..................................................23

*United States v. Lino*,
    No. 00 CR. 632 (WHP), 2001 WL 8356 (S.D.N.Y. Jan. 2, 2001).........................10

*United States v. Livoti*,
    8 F. Supp. 2d 246 (S.D.N.Y. 1998) ..............................................................29

*United States v. Marcus Schloss & Co.*,
    710 F. Supp. 944 (S.D.N.Y. 1989) ...............................................................20

*United States v. Martoma*,
    894 F.3d 64 (2d Cir. 2017)..........................................................................13

*United States v. Martoma*,
    990 F. Supp. 2d 458 (S.D.N.Y. 2014)........................................................27, 28

*United States v. Martoma*,
    No. 12 CR 973 PGG, 2013 WL 2435082 (S.D.N.Y. June 5, 2013) ...................6, 7, 8

*United States v. Menashe*,
    741 F. Supp. 1135 (S.D.N.Y.1990)............................................................18, 19

iv

*United States v. Michael Steinberg,*
   12 Cr. 121 (RJS) (S.D.N.Y Sept. 18, 2013)..................................................................11

*United States v. Moon,*
   718 F.2d 1210 (2d Cir.1983)........................................................................................26

*United States v. Nacchio,*
   05 Cr. 545 (EWN), 2006 WL 2475282 (D. Colo. Aug. 25, 2006) .............................7

*United States v. Nachamie,*
   91 F. Supp. 2d 565 (S.D.N.Y. 2000)......................................................................5, 29

*United States v. Newman, et al.,*
   12 Cr. 121 (RJS) (S.D.N.Y. Sept. 18, 2013)..............................................................11

*United States v. Nikas,*
   No. 19 Cr. 716 (DLC), 2019 WL 6838673 (S.D.N.Y. Dec. 13, 2019)......................12

*United States v. Pacione,*
   738 F.2d 567 (2d Cir. 1984).......................................................................................24

*United States v. Pirro,*
   212 F.3d 86 (2d Cir. 2000)....................................................................................23, 24

*United States v. Prange,*
   11 Cr. 10415 (NMG) 2012 WL 3263606 (D. Mass. Aug. 7, 2012) ..........................27

*United States v. Quattrone,*
   441 F.3d 153 (2d Cir. 2006).......................................................................................25

*United States v. Rajaratnam,*
   753 F. Supp. 2d 299 (S.D.N.Y. 2010)..................................................................18, 19

*United States v. Rajaratnam,*
   No. 09 CR. 1184 (RJH), 2010 WL 2788168 (S.D.N.Y. July 13, 2010) ..................6, 7

*United States v. Schwarz,*
   283 F.3d 76 (2d Cir. 2002).........................................................................................24

*United States v. Sezanayev,*
   No. 17 CR. 262 (LGS), 2018 WL 2324077 (S.D.N.Y. May 22, 2018) ......................20

*United States v. Strawberry,*
   892 F. Supp. 519 (S.D.N.Y. 1995) ............................................................................10

*United States* v. *Torres*,
No. 05-CR-838 (NGG), 2006 WL 1982750 (E.D.N.Y. July 13, 2006) .................................29

*United States v. Travisano*,
724 F.2d 341 (2d Cir.1983) .................................21

*United States v. Triumph Cap. Grp., Inc.*,
260 F. Supp. 2d 470 (D. Conn. 2003) .................................25, 26

*United States v. Upton*,
856 F. Supp. 727 (E.D.N.Y. 1994) .................................20

*United States v. Walters*,
16 Cr. 338 (PKC) (S.D.N.Y Dec. 2, 2016) .................................12

*United States v. Wey*,
256 F. Supp. 3d 355 (S.D.N.Y. 2017) .................................23

*United States v. Zemlyansky*,
945 F. Supp. 2d 438 (S.D.N.Y. 2013) .................................21

*Williamson v. United States*,
310 F.2d 192 (9th Cir. 1962) .................................17

*Zafiro v. United States*,
506 U.S. 534 (1993) .................................19

## Statutes

18 U.S.C. § 1503 .................................24, 25

## Other Authorities

FED. R. CRIM. P. 7(c) .................................13

FED. R. CRIM. P. 7(f) .................................5

FED. R. CRIM. P. 8(b) .................................17, 18

FED. R. CRIM. P. 14 .................................19

FED. R.CRIM. P. 17 .................................2

FED. R. CRIM. P. 17(c) .................................2, 15, 16

FRE 404(b) .................................29

## PRELIMINARY STATEMENT

Defendant Srinivasa Kakkera respectfully submits this Reply Memorandum of Law in reply to the Government's response in opposition to Mr. Kakkera's pretrial motions, filed on June 12, 2023 ("Gov't Opp.").

The Government fails to meaningfully respond to the serious deficiencies in the Indictment and its obligation to search for and produce exculpatory evidence.  The Government's opposition all but concedes that neither the Indictment nor discovery provides notice to Mr. Kakkera of what material nonpublic information ("MNPI") he allegedly traded upon.  Notice of the substance of the alleged MNPI is critical to allow Mr. Kakkera to prepare for trial and avoid unfair surprise.  The Government harps on its provision of a non-exclusive list of no fewer than 12 individuals it asserts participated in the alleged insider trading conspiracy along with Mr. Kakkera.  But as the Government well knows, Mr. Kakkera never even knew some of those individuals *existed* let alone joined a conspiracy together with them.  The Government does not satisfy its obligation to provide notice by simply regurgitating a laundry list of the subjects of its investigation.

More troubling, the Government seemingly makes light of its failure to produce clearly exculpatory information, despite its actual knowledge, for more than a year, of the existence of that evidence.  Mr. Kakkera began trading in Neophotonics on or about October 13, 2021, *12 days before* the October 25, 2021 date Lumentum reported to FINRA that Mr. Bhardwaj, the alleged tipper and only alleged source of MNPI, even became aware of the proposed Neophotonics transaction.  This information is not merely marginally helpful to the defense; it is *directly contradictory* to the Government's theory of guilt and, if proven, requires acquittal.

Despite repeated requests—and even though the Government evidently worked closely in this investigation with Lumentum to obtain tens of thousands of other documents—the

Government has repeatedly declined to provide any additional materials relating to Mr. Bhardwaj's October 25 date of awareness, instead requiring Mr. Kakkera's counsel to make application to this Court for a Rule 17(c) subpoena to Lumentum.

That subpoena yielded yet additional—and further contradictory—evidence of Mr. Bhardwaj's date of awareness in the form of an Excel spreadsheet containing a tab named "In the Know List," showing that Mr. Bhardwaj became first aware of confidential information regarding the Neophotonics transaction on *October 21, 2021*, still more than a week after Mr. Kakkera began trading in Neophotonics (the "Lumentum In the Know Spreadsheet"). Incredibly, the Government now pats itself on the back for—after requiring Mr. Kakkera to invoke Rule 17 to compel Lumentum to produce this exculpatory evidence, which Lumentum also produced to the Government at the same time—"immediately produc[ing] it to Kakkera . . . out of an abundance of caution." The only reason we now have this critical evidence is because of Mr. Kakkera's efforts.

Now, we have records from FINRA and Lumentum showing that Mr. Bhardwaj was not in possession of MNPI concerning the Neophotonics transaction until either October 25, 2021 (FINRA, per Lumentum) or October 21, 2021 (the Lumentum In the Know Spreadsheet, in response to Mr. Kakkera's subpoena), both of which are more than a full week after Mr. Kakkera began trading in Neophotonics, and are therefore directly contradictory to the Government's theory of guilt. Nonetheless, the Government persists in declining to provide any information, and indeed appears disinterested in this plainly exculpatory evidence.

The multiple contradictory dates for when Mr. Bhardwaj came into possession of confidential information make it even more important for the Court to order particulars as to the

substance of any alleged MNPI, as the *substance* of the alleged tips will likely bear upon the *timing* of Mr. Bhardwaj's receipt of the alleged MNPI.

Cutting across several of Mr. Kakkera's motions is the Government's continued refusal to state whether the Indictment alleges that Mr. Kakkera was a knowing participant in the separate and distinct Coherent insider trading scheme alleged in the Indictment.  Mr. Kakkera never traded in Coherent and is not charged with that scheme.  But the Indictment repeatedly insinuates— through suggestive innuendo—that Mr. Kakkera knowingly participated in that scheme.  This is not a where, when, why, or how.  Mr. Kakkera is entitled to know *what* it is the Government alleges he did wrong, including whether he is implicated in a totally different scheme from the one with which he is charged.

As the Government well knows, Mr. Kakkera was in the process of purchasing a new home—an endeavor he began years earlier—when he approached Mr. Bhardwaj in April 2021 (long before the alleged Neophotonics scheme began and long after the alleged Coherent scheme ended) for a loan to use in the purchase of Mr. Kakkera's home.[1]  According to the Indictment, this was a means for Mr. Bhardwaj to obtain a kickback for providing inside information to cooperator Dhirenkumar Patel. But the Indictment is coyly non-committal on whether Mr. Kakkera was aware that the transactions were part of an illegal scheme.  Mr. Kakkera was not aware, but he is entitled to know if that is what the Government is alleging and intends to prove at trial.

The Government has repeatedly declined Mr. Kakkera's request for this basic piece of information and, in its opposition papers, the Government attempts to belittle this request as some

---

[1] The discovery includes a mortgage file related to Mr. Kakkera's purchase of this home, which shows that Mr. Kakkera did in fact use the loans in connection with the purchase of his home.  *See* USAO_SDNY_000179300-USAO_SDNY_000180332.

minor detail, suggesting Mr. Kakkera wants to know "when exactly" he allegedly learned that these payments were unlawful.  But the Government relies heavily on these transactions in its opposition to Mr. Kakkera's motions, including Mr. Kakkera's motion for severance.  Gov't Opp. 24.  Evidently, the Government believes that withholding this basic information will increase pressure on Mr. Kakkera as he proceeds to trial.  The Government should not be permitted to have it both ways and should be compelled to immediately particularize whether it is alleging that Mr. Kakkera knowingly participated in the Coherent insider trading scheme or not.

The Government's boilerplate responses to Mr. Kakkera's other motions are likewise entirely without merit.  As to severance, the Government does not even address the serious prejudice to Mr. Kakkera were he to be tried with Mr. Saeedi.  Mr. Saeedi is alleged in the Indictment to have participated in two additional, separate, and distinct instances of insider trading together with Mr. Bhardwaj that would be wholly inadmissible as to Mr. Kakkera—the Coherent scheme and an earlier insider trading scheme in Neophotonics, both of which occurred from December 2020 to January 2021.  Mr. Kakkera is not alleged to have participated in those earlier schemes.

The Government's attempt to defend its utterly deficient cell site search warrant—through which it seized *11 months'* worth of Mr. Kakkera's location information—which the Government incredibly terms a "relatively short period[],"—having no conceivable connection to alleged criminal conduct by Mr. Kakkera—is risible.  The affidavit in support of the cell site warrant barely mentions Mr. Kakkera and the incorporated affidavit in support of a warrant for an entirely different type of information (prospective GPS data to locate Mr. Kakkera for an interview)

provides no probable cause to believe that Mr. Kakkera's *historical* cell site data would be evidence of insider trading.

As to Count Fourteen, the alleged conspiracy to obstruct justice, the Government's opposition repeatedly confirms that its allegations are limited, as in the Indictment, to an intent to obstruct a "federal investigation."  (Indictment ¶¶ 28-30; Gov't Opp. at 1, 5, 9).  But it is an intent to obstruct *the grand jury proceeding* that is required. Dismissal is appropriate where, as here, the allegations plainly fail to satisfy the elements of the offense.  And for the reasons set forth in Mr. Kakkera's opening briefs and below, the Court should grant Mr. Kakkera's other discovery requests in their entirety.

## I.   THE COURT SHOULD ORDER THE GOVERNMENT TO PROVIDE A BILL OF PARTICULARS.

The Government spends pages of its brief for the uncontroversial proposition that a bill of particulars is not to be used as a general investigative tool or a means to gather detail about the Government's case.  That is a correct statement of the law but has no bearing on Mr. Kakkera's motion.  The particulars Mr. Kakkera seeks go to the heart of what is necessary for Mr. Kakkera "to prepare for trial, [and] to prevent surprise . . .," *United States v. Bortnovsky*, 820 F.2d 572, 574 (2d Cir. 1987), which is precisely the intended purpose of Federal Rule of Criminal Procedure 7(f). *United States v. Nachamie*, 91 F. Supp. 2d 565, 571–74 (S.D.N.Y. 2000) (ordering bill of particulars in Medicare fraud case because "[w]hile the Indictment specifies five ways in which claims were falsified . . . no claims are identified by defendant, type of falsity, claim number and date") (internal citation omitted).

A bill of particulars is ordered more frequently in insider trading conspiracy cases because certain basic information is necessary to allow the defendant to adequately prepare for trial.  *See*,

*e.g.*, *United States v. Rajaratnam*, No. 09 CR. 1184 (RJH), 2010 WL 2788168, at *2 (S.D.N.Y. July 13, 2010) ("There is precedent for directing the filing of a bill of particulars in an insider trading conspiracy case."); *United States v. Contorinis*, 09 Cr. 1083(RJS), *slip op*. at 1 (S.D.N.Y. May 5, 2010) (directing the government to "submit a bill of particulars with respect to the material, non-public information allegedly disclosed in connection with" a specified transaction); *United States v. Martoma*, No. 12 CR 973 PGG, 2013 WL 2435082, at *3 (S.D.N.Y. June 5, 2013) (noting that "[s]uch particularization may be necessary where a defendant has been charged with an insider trading conspiracy, because '[t]he merits of such a charge depend heavily on the facts and context.'") (quoting *Rajaratnam*, 2010 WL 2788168, at *2).

**A.** **The Court Should Order the Government to Provide a Bill of Particulars as to the Neophotonics Insider Trading Conspiracy Alleged in Count Seven.**

The particulars Mr. Kakkera identified as necessary in his opening brief are not extensive, but they are critical, and the Government does little to address them.

**1.** **The Nature, Substance, and Timing of the MNPI Mr. Kakkera Allegedly Received from Mr. Bhardwaj.**

The Government concedes that the sum total of information it has provided of the nature and substance of the MNPI at issue is that "Lumentum was negotiating to acquire Neophotonics." (Gov't Opp. at 11 (citing Indictment ¶¶ 3, 21-24, 47)). That shorthand, for several reasons, falls far short of what is necessary to avoid unfair surprise and allow Mr. Kakkera to prepare for trial.

*First*, as several district courts have recognized, more is necessary to allow a defendant to prepare a defense that alleged MNPI was not, in fact, "material" or was not "nonpublic.":

> [In] an insider trading conspiracy case . . . the government must prove that the defendants conspired to acquire material nonpublic information. The merits of such a charge depend heavily on the facts and context. A defendant might argue that the information he sought to obtain was not material, or that it was already public at the time

6

> he tried to get it. *But he can only do that if he knows what the*
> *information is and when it was conveyed.*

*Rajaratnam*, 2010 WL 2788168, at *2 (emphasis added); *see also Contorinis*, 09 Cr. 1083(RJS),

*slip op.* at 1 (S.D.N.Y. May 5, 2010) (directing the government to "submit a bill of particulars with

respect to the material, non-public information allegedly disclosed in connection with" a specified

transaction); *United States v. Nacchio*, 05 Cr. 545(EWN), 2006 WL 2475282, at *3, *5–*9 (D.

Colo. Aug. 25, 2006) (directing the government to provide additional particulars regarding the

nature of the inside information). *Cf. Martoma*, 2013 WL 2435082, at *3 (denying bill of

particulars because "the Government has *provided numerous specific details about the inside*

*information* Defendant allegedly obtained about the clinical trial.") (emphasis added).

The only authority cited by the Government on this point is *Chow*, the reasoning of which

plainly militates in favor of a bill of particulars in this case. This Court in *Chow* denied a bill of

particulars because it determined that: (1) in the absence of any cooperating witness testimony, all

alleged MNPI would have been fully disclosed in the discovery, avoiding any unfair surprise; and

(2) the Indictment's detailed recounting of specific confidential information concerning

developments in the merger discussions, along with a pattern of communications and then trading,

provided Chow sufficient notice of the MNPI the Government was relying upon (namely, the

confidential merger information described in the Indictment). The Court stated:

> . . . I believe that the indictment provides Mr. Chow with notice of
> the nature of the MNPI at issue sufficient to enable him to prepare
> for trial and to avoid unfair surprise. *I also say that with the*
> *understanding that this is not, as both sets of counsel have told me,*
> *a cooperator case, and that, therefore, the communications that*
> *include the government's evidence of the MNPI have already been*
> *produced as part of discovery.* The government may make
> arguments from that or inferences from that that aren't disclosed,

> but I understand that the substantive communications are
> documented and have been provided in discovery.
>
> The indictment describes specific developments in the negotiations
> with Lattice of which Mr. Chow was aware, and that were followed
> by a meeting or rather a communication between Mr. Chow and Mr.
> Yin. The indictment then identifies the trading in Lattice executed
> by Mr. Yin shortly after those communications. *As a result, Mr.
> Chow was placed on notice of the general nature of the MNPI of
> which he was allegedly aware at the time of each of the alleged
> communications with Mr. Yin.  See, e.g., Martoma*, 2013 WL
> 2435082 at *4 . . .

Opening Br. in Support of Motion for Bill of Particulars ("BOP Motion"), Kobre Decl. Ex. E, Oral

Arg. Tr. at 72-74, *United States v. Benjamin Chow*, 17 Cr. 667 (GHW) (S.D.N.Y. February 9,

2018), ECF. No. 83 ("*Chow* Tr.").; *See also* Indictment, *United States v. Chow*, 17 Cr. 667 (GHW)

(S.D.N.Y. May 21, 2019) ECF No. 2.

Here, unlike in *Chow*, this very much *is* "a cooperator case"; it is *not* the case that "the

communications that include the government's evidence of the MNPI have already been produced

as part of discovery" (none have); and the Indictment does *not* "describe[] specific developments

in the negotiations with [Neophotonics] of which Mr. [Bhardwaj] was aware, and that were

followed by a meeting or rather a communication between Mr. [Bhardwaj] and Mr. [Kakkera]."

*Chow* Tr., at 72-74.

*Second*, Mr. Kakkera's need for the substance of the alleged MNPI is not merely

hypothetical.  The materiality and public nature of the Lumentum-Neophotonics negotiations will

very much be an issue at trial.  As alleged in the indictment itself, Lumentum had *already* engaged

in negotiations to acquire Neophotonics *nearly a year earlier*, though it ultimately decided not to

proceed with that acquisition.  (Indictment ¶ 13).  Lumentum's interest in acquiring Neophotonics

was no secret and places both materiality and the publicity of the subsequent October 2021

negotiations very much at issue.  And that is all apart from multiple news articles and analyst reports to the effect that Neophotonics was an attractive acquisition target.[2]  Mr. Kakkera needs to know the substance of the alleged MNPI to prepare a defense on these grounds.

*Third*, the utter contradictory evidence provided by the Government and Lumentum regarding Mr. Bhardwaj's date of awareness of the Neophotonics transaction heightens Mr. Kakkera's need to be apprised of the substance of the alleged MNPI.  Thus far, the evidence includes two different dates of awareness—October 25 and October 21—both of which postdate by at least a week Mr. Kakkera's initial trading in Neophotonics, which began on October 13.  And the Government now asserts that it expects to show at trial that "Bhardwaj did in fact know about the merger negotiations prior to October 15, 2021." (Gov't Opp. 12, fn.2).

The conflicting evidence of Mr. Bhardwaj's date of awareness suggests that he may have had different pieces of information at different times, not all of which may have been material and not all of which may have been nonpublic.  The substance of the alleged MNPI is likely to bear heavily on the critical question of when Mr. Bhardwaj first came into possession of the MNPI.[3]

### 2. The Identities of Unindicted Co-Conspirators the Government Intends to Rely Upon at Trial.

The Government does not satisfy its obligation to provide sufficient particularity to avoid unfair surprise and allow Mr. Kakkera to prepare for trial simply by providing a nonexclusive

---

[2] *See, e.g.*, BOP Motion, Kobre Decl. Ex. J, "*NPTN: Strong Print/Guide as 400G/400G+ Grows100% and New Product Ramp Looms*," Needham (August 4, 2021) ("Neo is an attractive asset for a strategic buyer, in our opinion, as the company's size makes it readily absorbable, and it operates in a sector that has improving dynamics; *we think this makes it an acquisition target.*") (emphasis added).

[3] For example, to the extent that the alleged MNPI includes information about developments in the negotiations between the Lumentum and Neophotonics, or varying levels of certainty regarding the likelihood a transaction would be consummated, that information would help in determining the timing of Mr. Bhardwaj's access to the alleged confidential information.

laundry list of no fewer than 12 subjects of its investigation, including individuals the Government well knows were not, in fact, participants in the conspiracy charge against Mr. Kakkera.

*First*, because the Government refuses to provide a definite and bounded list of unindicted co-conspirators, *see* Gov't Opp, Ex. A at 1-2 ("Without purporting to identify every individual who participated in these offenses . . ."), it leaves Mr. Kakkera to wonder who else and how many others it intends to introduce as an unindicted co-conspirator at trial.

*Second*, the laundry list of 12 individuals provided by the government hardly allows Mr. Kakkera to avoid surprise and prepare for trial. *See United States v. Lino*, No. 00 CR. 632 (WHP), 2001 WL 8356, at *4 (S.D.N.Y. Jan. 2, 2001) ("The Second Circuit . . . has made clear that the Government does 'not fulfill its obligations merely by providing mountains of documents to defense counsel who were left unguided' as to the nature of the charges pending") (quoting *Bortnovsky*, 820 F.2d at 575); *United States v. Bin Laden*, 92 F. Supp.2d 225, 234 (S.D.N.Y. 2000) ("It is no solution to rely solely on the quantity of information disclosed by the government; sometimes, the large volume of material disclosed is precisely what necessitates a bill of particulars.").  *See also United States v. Strawberry*, 892 F. Supp. 519, 527 (S.D.N.Y. 1995) (requiring the Government to provide a bill of particulars identifying "all persons whom the Government *will claim at trial* were co-conspirators") (emphasis added).

This is particularly true where, as here, the Government well knows that Mr. Kakkera was *not* in the same conspiracy with many of those individuals.  By way of example, the Government's nonexclusive list includes Mr. Saeedi, although Mr. Kakkera never met Mr. Saeedi during the insider trading conspiracy and, indeed, for that reason the Government charged Mr. Saeedi in a

separate conspiracy count.  Likewise for Messrs. Patel and Chitor, the Government's cooperators, who appear on the nonexclusive list of alleged conspirators.

If the Government could satisfy its obligations by providing lengthy, nonexclusive lists of all potential subjects in its investigation, a bill of particulars would never be necessary.  That is not the law.  *See*, *e.g.*, BOP Motion, Kobre Decl. Ex. F, *United States v. Michael Steinberg*, 12 Cr. 121 (RJS) (S.D.N.Y. Sept. 18, 2013) ECF No. 299 ("Steinberg Bill of Particulars") (government provided bill of particulars, pursuant to court order, setting forth the identity of "known" co-conspirators, including specific "analyst," "portfolio manager," and "other" co-conspirators); Kobre Decl. Ex. G, *United States v. Newman, et al.*, 12 Cr. 121 (RJS) (S.D.N.Y. Aug. 29, 2012) ECF No. 111.  ("Newman Bill of Particulars") (government provided similar bill of particulars as in *Steinberg*); Kobre Decl. Ex. H, *United States v. Gupta*, 11 Cr. 907 (JSR) (S.D.N.Y. Apr. 9, 2012) ECF No. 47.  ("Gupta Bill of Particulars") (government provided bill of particulars detailing "the identity of additional known coconspirators in the charged conspiracy"); *See also United States v. Feola*, 651 F. Supp. 1068, 1131–34 (S.D.N.Y. 1987) (granting demand for bill of particulars specifying "the names of all persons whom the Government will claim at trial were co-conspirators").

### 3. The Particular Trades the Government Intends to Rely Upon at Trial to Prove an Alleged Insider Trading Conspiracy.

The Government's opposition implies that it intends to rely upon *all* of Mr. Kakkera's October and November 2021 Neophotonics trading activity as the basis for the insider trading counts against Mr. Kakkera.  If all this trading allegedly occurred on the basis of precisely the same MNPI, this might be a sufficient particularization of the trades at issue.  However, the Government has not provided the nature, substance, or timing of any of the alleged MNPI, and

11

therefore Mr. Kakkera does not know which of these trades were allegedly "on the basis" of what alleged MNPI.

Mr. Kakkera's defense to the various trades plainly may be different depending upon what alleged MNPI the Government claims Mr. Kakkera was in possession of at the time of those trades. Moreover, there will be evidence at trial that Mr. Bhardwaj was not even aware of any MNPI until various midpoints of this trading activity—i.e., October 21, October 25.  For both reasons, the Government should be required to particularize the trading activity it intends to rely upon at trial. BOP Motion, Kobre Decl. Ex. E, *Chow* Tr. at 80-81; BOP Motion, Kobre Decl. Ex. I, Oral Arg. Tr. at 27, *United States v. Walters*, 16 Cr. 338 (PKC) (S.D.N.Y Dec. 2, 2016) (ordering the Government to identify "[a]ll trades that you intend to offer in evidence as proof of the crimes charged in this indictment as an unlawful trade.").

### 4.    Any "Personal Benefit" To the Alleged Tipper as a Result of the Tip.

The Government does not dispute that the insider trading charges require proof that Mr. Bhardwaj received a personal benefit in exchange for allegedly providing MNPI to Mr. Kakkera. To properly prepare for trial, Mr. Kakkera is entitled to know what personal benefit the Government intends to rely upon at trial.  That is exactly what Judge Cote held in *United States v. Nikas*, No. 19 Cr. 716 (DLC), 2019 WL 6838673, at *2 (S.D.N.Y. Dec. 13, 2019) (ordering that "[t]he Government must disclose with reasonable specificity the payments by Nikas to Lavidas on which it will rely at trial to prove that Nikas paid Lavidas for providing the material nonpublic information.").[4]

---

[4] The Government's contention that *Nikas* is distinguishable because the indictment in that case already identified the payments as the personal benefit, if anything, supports the need for the Government to provide particulars on this requirement.

The Government points out that the Indictment contains allegations that Mr. Bhardwaj's agreement with both cooperators—Messrs. Patel and Chitor—included actual kickback payments of money.  (Gov't Opp. 2, 4).  That is true, and the existence of those allegations in the Indictment—contrasted with the glaring absence of any such allegation as to Mr. Kakkera—shows that the Government well understands the importance of this information and the need to provide it so that Mr. Kakkera can adequately prepare for trial.[5]

**B.      The Court Should Order the Government to Provide a Bill of Particulars as to the Obstruction of Justice Conspiracy Alleged in Count Fourteen.**

Rather than simply answering the basic question when, if ever, Mr. Kakkera learned that the loans he requested and used to purchase his home were part of an unlawful insider trading scheme—which would require just a few words to answer—the Government spends a page and a half purporting to explain why it need not answer that question.  But Mr. Kakkera is entitled to notice if he is being charged with participating in a wholly distinct insider trading conspiracy related to a different issuer, *i.e.*, Coherent.

The Federal Rules of Criminal Procedure require that the Indictment contain a "plain, concise, and *definite* written statement of the essential facts constituting the offense charged." Rule 7(c) (emphasis added).  But the Indictment is anything but "definite" on this point.  The Indictment alleges that Mr. Kakkera "falsely told FBI agents that the $100,000 he received from Dhirenkumar Patel, described above, was a loan, when, in truth and in fact, it was payment for

---

[5] The Indictment's allegation that Mr. Kakkera "was a friend" of Mr. Bhardwaj hardly satisfies the "personal benefit" requirement. *United States v. Martoma*, 894 F.3d 64, 78 (2d Cir. 2017) (holding jury instructions erroneously allowed a finding of personal benefit based solely on the conclusion that the purpose of the tip was to "develop[ ] or maintain[ ] ... a friendship."; "A properly instructed jury would have been informed that it could find a personal benefit based on a 'gift of confidential information to a trading relative or friend' *only if it also found* that Dr. Gilman and Martoma shared a relationship suggesting a *quid pro quo* or that Dr. Gilman intended to benefit Martoma with the inside information.") (emphasis added).

BHARDWAJ having provided MNPI to Patel to make well timed trades in Coherent stock." (Indictment ¶ 26). *See also* Indictment ¶ 67(b) ("KAKKERA created a fake promissory note in order to make it appear that a $100,000 payment from Dhirenkumar Patel to KAKKERA was a loan when, in truth and in fact, the payment represented proceeds of Patel's trading in Coherent stock based on MNPI that BHARDWAJ provided to Patel."). These allegations certainly *suggest* that Mr. Kakkera participated in those transactions with knowledge of their illicit purpose ("when, in truth and in fact . . ." the payments were a kickback) and, indeed, the transactions appear in a section of the Indictment titled "Insider Trading in the Lumentum-Coherent Deal." (Indictment, at 5). But Mr. Kakkera should not be required to rely on opaque suggestion or innuendo to discern what the Government will claim at trial he has done wrong.

Notice is necessary regarding whether and, if so, when Mr. Kakkera was aware that the loan transactions were part of an insider trading scheme, both to prevent unfair surprise and to enable him to prepare for trial. The Government has never charged Mr. Kakkera with participating in the Coherent insider trading scheme—because Mr. Kakkera never traded in Coherent and there is no evidence to support his knowing participation in that scheme—but nonetheless improperly seeks to tar him at trial through suggestive and indefinite pleading.

The issue cuts across multiple allegations in the Indictment, and the Government relies on these allegations in arguing against severance. *See* Gov't Opp, at 24 ("Moreover, although Kakkera did not trade in Coherent, the Indictment does allege his involvement in that activity . . ."). What does the Government mean by "involvement in that activity"? Knowing involvement or unknowing? We are left to guess. It makes a difference because if, as Mr. Kakkera contends, he knew nothing about any illicit purpose to the transaction and understood the money as a loan

for the purchase of his home, evidence of Mr. Kakkera's participation in the transaction is irrelevant, prejudicial, and weighs in favor of severance. The same question arises as to multiple critical allegations in the Indictment likely to arise at trial, including that Mr. Kakkera supposedly lied to the FBI when he said that Mr. Patel's check was a loan, (Indictment ¶ 26), and that he obstructed justice by allegedly creating a "fake" promissory note pertaining to his receipt of the check. (Indictment ¶ 31). These allegations rise or fall on the critical question whether Mr. Kakkera allegedly knew about the alleged Coherent scheme at the time he received the loans.

## II. THE COURT SHOULD ORDER THE GOVERNMENT TO IMMEDIATELY PROVIDE ALL EXCULPATORY EVIDENCE, INCLUDING ALL INFORMATION RELATING TO MR. BHARDWAJ'S DATE OF AWARENESS.

Critical to Mr. Kakkera's defense is proof that the only alleged source of MNPI, Mr. Bhardwaj, did not even possess the alleged MNPI until more than a week after Mr. Kakkera began trading. Lumentum reported to FINRA that Mr. Bhardwaj only became aware of the alleged MNPI concerning Neophotonics on October 25, 2021, 12 days *after* Mr. Kakkera began trading in the stock. Mr. Kakkera *for nearly a year now* has pleaded with the Government to provide information and documents relating to the October 25 date reported to FINRA, which plainly did not materialize out of thin air. But despite repeated requests and then, ultimately, a Rule 17(c) subpoena to Lumentum, Mr. Kakkera has still received not a shred of paper or scintilla of evidence from the Government or Lumentum reflecting the basis for the October 25 date of awareness Lumentum reported to FINRA.

The time has come for the stonewalling to end. The Court should order the Government to immediately produce the exculpatory records. Because the Court is already aware of the background, it is not necessary to repeat these circumstances at length. The critical facts are as follows:

- Discovery in this case includes a "Chronology Response Report" from FINRA reflecting that Lumentum reported to FINRA that Mr. Bhardwaj first became aware of Lumentum's negotiations to acquire Neophotonics on October 25, 2021, *12 days after* Mr. Kakkera began trading in that stock.  Opening Br. in Support of Motion to Compel, Kobre Decl., Ex. B.

- Counsel for Mr. Kakkera has repeatedly asked the Government to provide any documents or information showing the basis for the October 25, 2021, date of awareness—a fact that plainly could not have materialized without some backup documentation—and has received nothing.

- Mr. Kakkera's Rule 17(c) subpoena to Lumentum (the "Rule 17(c) Subpoena"), which Mr. Kakkera obtained from this Court after the Government declined to obtain any additional records, likewise did not yield any records reflecting or supporting the basis for Lumentum's report to FINRA that Mr. Bhardwaj's date of awareness was October 25, 2021.

- The Rule 17(c) Subpoena did yield a piece of clearly exculpatory evidence—the Lumentum In the Know Spreadsheet—showing that Mr. Bhardwaj only became aware of the potential Neophotonics acquisition on October 21, 2021, which is still more than a week after Mr. Kakkera began trading in the stock.

- The Government asserts that it somehow never obtained the Lumentum In the Know Spreadsheet until Mr. Kakkera obtained it through his Rule 17(c) Subpoena. This is bewildering, given that the Government has worked closely with Lumentum for more than a year, obtaining tens of thousands of other documents in this investigation.

- Lumentum's response to the Rule 17(c) Subpoena included no other documents or records relating to the October 21, 2021 date reflected in the Lumentum In the Know Spreadsheet.  It is inconceivable that this date also materialized in Lumentum's spreadsheet without any basis or backup documentation.

The upshot of all of this is that Mr. Kakkera is being given the runaround, with the existence now of two distinct and contradictory dates of awareness for Mr. Bhardwaj, both of which are at least a week after Mr. Kakkera began trading in Neophotonics and are clearly exculpatory.  Both the Government and Lumentum assert that no other documents or records exist to show where

16

these dates came from.  That is not simply implausible, it is impossible, and the Government knows it.[6]

The Court should compel the Government immediately to provide all records and other information relating to the October 21 and October 25 dates on which Mr. Bhardwaj allegedly became aware of Lumentum's negotiations to acquire Neophotonics.

## III.  THE COURT SHOULD SEVER MR. KAKKERA FROM CO-DEFENDANT SAEEDI FOR TRIAL.

Contrary to the Government's assertion, joinder is not appropriate under Rule 8(b) merely because Mr. Kakkera and Mr. Saeedi are charged together in Count Fourteen.  "Judicial construction of Rule 8(b) has well-settled the interpretation that '[w]here multiple defendants are involved, Rule 8(b) requires that *each count of the indictment* arise out of 'the same series of acts or transactions' in which all of the defendants have participated.'"  *United States v. Haim*, 218 F. Supp. 922, 930–31 (S.D.N.Y. 1963) (emphasis added) (quoting *Williamson v. United States*, 310 F.2d 192, 197 (9th Cir. 1962)).  But the separate conspiracies Messrs. Kakkera and Saeedi are charged with in Counts Seven and Eight did *not* arise from the same series of acts or transactions.  Nor did the entirely distinct Coherent insider trading scheme—which took place nearly a year earlier, involved entirely different alleged MNPI, and involved trading in a different security— and in which Mr. Saeedi, but not Mr. Kakkera, is alleged to have participated.

The Second Circuit has made clear that joinder under Rule 8(b) requires alleged criminal acts that either (1) arise out of a common plan or scheme, or (2) are unified by some substantial

---

[6] Mr. Kakkera has asked the Government on two occasions, April 4, 2023, and June 21, 2023, to provide the grand jury subpoenas and any SEC subpoenas in its possession that were issued to Lumentum during this investigation, in an attempt to locate documents or other information supporting either the October 21 or October 25 alleged dates of awareness.  The Government has refused to provide those subpoenas.

17

identity of facts or participants."  Fed. R. Crim. P. 8(b); *United States v. Cervone*, 907 F.2d 332, 341 (2d Cir. 1990) (quoting *United States v. Attanasio*, 870 F.2d 809, 815 (2d Cir. 1989)).

The three separate conspiracies at issue do not meet the "common plan or scheme" requirement because none of the alleged schemes "stemmed from the other such that one scheme is part and parcel of the other."  *United States v. Rajaratnam*, 753 F. Supp. 2d 299, 304 (S.D.N.Y. 2010) (internal quotation marks omitted).  Each of the three separate schemes—the alleged Bhardwaj-Saeedi Neophotonics scheme, Bhardwaj-Kakkera Neophotonics scheme, and Bhardwaj-Saeedi Coherent scheme—existed independently and none depended on the others for its existence.  The mere fact that two schemes may be "of a similar character or involve one or more common participants" is *not* sufficient to meet the "common plan or scheme" requirement. *United States v. Lech*, 161 F.R.D. 255, 256 (S.D.N.Y. 1995).  Moreover, Mr. Kakkera did not know of either of the alleged conspiracies between Messrs. Bhardwaj and Saeedi and a "'plan cannot be called 'common' [where a single defendant] is the only one alleged to be aware of it.'" *Rajaratnam*, 753 F. Supp. 2d at 304 (quoting *United States v. Menashe*, 741 F. Supp. 1135, 1138 (S.D.N.Y.1990)).

Similarly, the "substantial identity" standard for joinder is not met because "'proof of one scheme is [not] indispensable for a full understanding of the other.'"  *Rajaratnam*, 753 F. Supp. 2d at 304 (citation omitted). None of the evidence relating to the Coherent insider trading scheme will be relevant to the alleged Neophotonics insider trading conspiracy with which Mr. Kakkera is charged.  And even as to the Bhardwaj-Saeedi Neophotonics scheme, most of the evidence will *not* be common, including the substance and timing of the MNPI—Bhardwaj's alleged provision of MNPI to Messrs. Kakkera and Saeedi occurred separately and independently, the two never met

18

or communicated during the alleged conspiracies, and their trading occurred approximately a week apart[7]— and the personal benefit Mr. Bhardwaj allegedly received from the two in the separate conspiracies.   Joinder is thus improper because "[c]ommission of one of the offenses neither depended upon nor necessarily led to the commission of the other and proof of the one act neither constituted nor depended upon proof of the other." *Id.* (internal quotation marks omitted). *See also Lech*, 161 F.R.D. at 256; *Rajaratnam*, 753 F. Supp. 2d at 304; *Menashe*, 741 F.Supp. at 1138.

Severance is also necessary under Rule 14 because there is a "serious risk that a joint trial . . . [will] prevent the jury from making a reliable judgment about guilt or innocence." *See Zafiro v. United States*, 506 U.S. 534, 539 (1993).   Rather than proving the alleged conspiracy against Mr. Kakkera through evidence of that offense, the Government's papers make clear that it intends to ask the jury to improperly infer Mr. Kakkera's guilt fromall means of  alleged criminal conduct by Mr. Saeedi having nothing whatsoever to do with Mr. Kakkera.   This includes: (1) the Coherent insider trading scheme with which Mr. Kakkera was not charged (indeed, Mr. Kakkera has never traded in Coherent securities); (2) Mr. Saeedi's Neophotonics trading records, which the Government asserts "will be relevant against Kakkera to show when Bhardwaj began providing MNPI in Neophotonics," (Gov't Opp. at 25); and (3) Mr. Saeedi's earlier trading in Neophotonics in or about December 2020, during the earlier set of negotiations between Lumentum and Neophotonics, which did not ultimately come to fruition.   (Indictment ¶ 15).

None of this evidence would be admissible at a trial against Mr. Kakkera alone.   It is, rather, the proverbial *wolf* of improper propensity evidence as to Mr. Bhardwaj masquerading in the *lamb*'s clothing of purported "background," "modus operandi," and "relationship" evidence,

---

[7] Mr. Kakkera began trading in Neophotonics on or about October 13, 2021, whereas Mr. Saeedi only began trading a week later, on or about October 20, 2021.

(Gov't Opp. at 24-25), and it is highly prejudicial to Mr. Kakkera.  *United States v. Marcus Schloss & Co.*, 710 F. Supp. 944, 954 (S.D.N.Y. 1989) (excluding evidence in insider trading case of trading by other alleged tippees because "evidence of Teicher's tips and trades [would leave] . . . counsel for Yagoda and Schloss essentially helpless to deal with them, or to prevent the inevitable, cumulative, spillover effect upon their own clients").  *United States v. Sezanayev*, No. 17 CR. 262 (LGS), 2018 WL 2324077, at *2 (S.D.N.Y. May 22, 2018) ("Circumstances that may warrant severance include allowing the jury to consider evidence that otherwise would not be admissible if the defendant were tried alone.").

The Government charged Mr. Kakkera with conspiring with Mr. Bhardwaj to commit insider trading and should not be permitted to prop up its scant evidence on that charge through a host of incidents of alleged unrelated conduct by Mr. Saeedi.  But that is precisely what would result from a joint trial.  Severance to avoid this serious prejudice is therefore required. *See Marcus Schloss & Co.*, 710 F. Supp. at 954 ("It is fair to require the government to prove its conspiracy and substantive charges against Yagoda and Schloss on the basis of their own acts, and not the acts of others. It would be unfair to require Yagoda and Schloss to explain and defend not only their own acts, but the acts of others, such as the Teicher defendants."); *United States v. Upton*, 856 F. Supp. 727, 736 (E.D.N.Y. 1994) ("The accumulation of evidence during the course of trial places the uninvolved defendants at risk of 'spillover' because the jurors may not be able to prevent themselves from attributing the evidence to the uninvolved defendants.").

## IV.   THE COURT SHOULD SUPPRESS THE 11 MONTHS OF CELL SITE DATA SEIZED BY THE GOVERNMENT THROUGH AN OVERBROAD WARRANT LACKING PROBABLE CAUSE.

The Historical Cell Site Affidavit is defective because it fails to provide "probable cause to believe that evidence of such crime [insider trading] is located" in the Historical Cell Site

Record," *United States v. Travisano*, 724 F.2d 341, 345 (2d Cir.1983), and because it is grossly overbroad. *United States v. Zemlyansky*, 945 F. Supp. 2d 438, 450 (S.D.N.Y. 2013).

First, to clear up two non-issues raised by the Government, Mr. Kakkera seeks to suppress only *his own* historical cell site records, not anyone else's, and Mr. Kakkera agrees that the March 24, 2022 affidavit in support of a warrant for prospective cell site information (the "Prospective Location Data Affidavit") was properly incorporated into the April 21, 2022 affidavit ("Historical Cell Site Affidavit"). Neither of those points helps the Government, however, in its effort to sustain an affidavit thoroughly lacking in probable cause for any, let alone *nearly a full year's worth* of Mr. Kakkera's historical cell site data seized by the Government.

After spending pages to reproduce large portions of mostly irrelevant parts of the affidavits, Gov't Opp, 30-32, the Government in the end concedes that neither affidavit contains facts demonstrating that geographical location information for Mr. Kakkera would be evidence of insider trading. No facts are recited in either affidavit reflecting that Mr. Kakkera was ever in physical proximity to Mr. Bhardwaj or even a bare assertion by the agent professing a likelihood that the two were in physical proximity during a relevant period. Grasping at straws, the Government points to the Prospective Location Data Affidavit's mention that Mr. Bhardwaj provided MNPI in person to a different individual, Ramesh Chitor. But the affidavits nowhere connect Mr. Chitor to Mr. Kakkera—neither by phone, text, or in person meeting. (In fact, Mr. Kakkera never even heard of Mr. Chitor until after this Indictment was returned.).

Nowhere does the affidavit suggest that merely because Mr. Bhardwaj met with one individual (Mr. Chitor) in person that there was therefore probable cause that he also met with a totally unrelated and unconnected individual (Mr. Kakkera) in person. Certainly, the affidavit

drew no such inference.  And nowhere is there any suggestion that Mr. Bhardwaj was likely to have communicated MNPI to Mr. Kakkera in person.  For good reason.  Any such assertion would, absent additional facts, simply not be credible, given that the relevance of physical proximity is a variable factor.  The facts related in the affidavit as to Mr. Chitor may have been sufficient to support probable cause as to Mr. Chitor's own historical cell site records. They do not support the seizure of Mr. Kakkera's records.

The reality is that the Government took a search warrant affidavit in support of a warrant for *prospective* location information to locate Mr. Kakkera for an interview and hastily and carelessly tried to repurpose it to support a warrant for Mr. Kakkera's historical location information without adding even a single additional fact to support the seizure of those records.

The warrant is, moreover, grossly overbroad in authorizing the seizure of 11 months of Mr. Kakkera's historical cell site data, including for a six-month period—September 1, 2020 to February 28, 2021—during which Mr. Kakkera *neither traded in any of the securities at issue nor was alleged to have had any contact, phone or otherwise, with Mr. Bhardwaj*.  The Historical Cell Site Affidavit contains not a scintilla of evidence to support the seizure of records during this *six month time interval*, which the Government, incredibly, refers to as a "relatively short period[]." Gov't Opp. at 33.

The Government attempts to justify *post hoc* this wholly unsupported overbroad seizure as necessary to understand "the defendant's pattern of activity."  But the affidavit contains no such explanation or request, and it therefore may not be considered now to justify a deficient warrant. *United States v. Falso*, 544 F.3d 110, 122 (2d Cir. 2008) (probable cause for the issuance of a search warrant "must be contained within the four corners of a written affidavit given under oath").

*See United States v. Wey*, 256 F. Supp. 3d 355, 381 (S.D.N.Y. 2017) ("Many courts, for example, have found warrants for the seizure of business records constitutionally deficient where they imposed too wide a time frame or failed to include one altogether.") (internal quotation marks and brackets omitted).

Similarly, there was no probable cause to justify the seizure of Mr. Kakkera's location information for the period from August 1, 2021 to December 31, 2021. According to the Prospective Location Data Affidavit, the earliest relevant trading by Mr. Kakkera or any associated entity or individual was October 15, 2021, and, per that affidavit, Lumentum was first notified on October 6, 2021 that Neophotonics would pursue a strategic acquisition by Lumentum. These facts, taken separately but certainly taken together, could *at most* support the seizure of records beginning in October 2021, not August 2021. And there was no basis for the seizure of Mr. Kakkera's historical cell site information following the November 4, 2021 public announcement of the transaction.[8] [9]

## V.     THE COURT SHOULD DISMISS COUNT FOURTEEN OF THE INDICTMENT.

Count Fourteen should be dismissed because it "fails to allege the essential facts constituting the offense charged." *United States v. Pirro*, 212 F.3d 86, 91 (2d Cir. 2000). It fails

---

[8] That Mr. Kakkera allegedly sold Neophotonics securities following the November 4, 2021 announcement provides no basis for the seizure of his location information after that date.

[9] The cases cited by the Government all relied upon the fact that the alleged criminal activity was more extensive and extended for much longer periods of time. *See, e.g., United States v. Levy*, 2013 WL 664712, at *8 (S.D.N.Y. Feb. 25, 2013) (warrant provided "a substantial basis from which to conclude that there was probable cause of evidence beyond the time period in which Mrs. Levy and others allegedly manipulated Stock 3"); *United States v. Hernandez*, No. 09 CR 625 (HB), 2010 WL 26544, at *9 (S.D.N.Y. Jan. 6, 2010) ("Given the complex nature of the criminal scheme and the number of years in which it was ongoing, a lack of a specific time frame in the search warrants is not sufficient in of itself to render the warrants constitutionally overbroad."). Here, by contrast, the alleged criminal activity was circumscribed and limited. And, contrary to the way it is characterized in the Government's brief, the court in *United States v. Blakstad*, No. 19 CR. 486 (ER), 2020 WL 5992347 (S.D.N.Y. Oct. 9, 2020) did not authorize the *seizure* of an overbroad set of emails, only the *search* of those emails for materials otherwise falling within the categories authorized by the warrant.

to allege that Mr. Kakkera had "a specific intent to obstruct a federal judicial or grand jury proceeding." *United States v. Schwarz*, 283 F.3d 76, 109 (2d Cir. 2002); *id.* ("Accordingly, the conduct offered to evince that intent must be *conduct that is directed at the court or grand jury* and that, in the defendant's mind, has the 'natural and probable effect' of obstructing or interfering with that entity.") (citing *United States v. Aguilar*, 515 U.S. 593, 599 (1995).

The problem with the Indictment is that it alleges facts that are *contrary to*, and fall far short of, the intent required under Section 1503.  The Indictment repeatedly alleges an intent to interfere with the "federal investigation," "federal authorities," and "law enforcement." (Indictment ¶¶ 28-30), which simply does not reach what the statute requires.  *Aguilar*, 515 U.S. at 599 ("[I]t is not enough that there be an intent to influence some ancillary proceeding, such as an investigation independent of the court's or grand jury's authority."); *Schwarz*, 283 F.3d at 109 ("He may have *hoped* that they [his false statements] would be provided to the grand jury, and *surely there was that possibility*; but there was insufficient evidence to 'enable a rational trier of fact to conclude that [Bruder] *knew*' that this would happen or that he entertained any expectations on that score that were based on such knowledge.") (emphases added).

It is true that *Aguilar* and *Schwarz* involved challenges to the sufficiency of the evidence. But it is equally true that "[d]ismissal is required where the conduct alleged in the indictment as a factual basis for the offense is not actually prohibited by the language of the statute." *United States v. Aleynikov*, 737 F. Supp. 2d 173, 176–77 (S.D.N.Y. 2010); *Pirro*, 212 F.3d at 91, 93 (affirming dismissal where the Government's proposed proof would not establish a crime within the terms of the statute); *United States v. Pacione*, 738 F.2d 567, 572 (2d Cir. 1984) (same).  *See Russell v. United States*, 369 U.S. 749, 768 (1962) ("[A]n important corollary purpose" of the requirement

that an indictment state the elements of an offense "is to inform the court of the facts alleged, so that it may decide whether they are sufficient in law to support a conviction, if one should be had.") (citing *United States v. Cruikshank*, 92 U.S. 542, 558 (1875)).

That the Government's allegations fall short of the required intent is confirmed by its opposition papers, which double down on this deficiency, repeatedly asserting an intent to obstruct, not a grand jury, but rather a "federal investigation." *See, e.g.*, Gov't Opp. at 1 ("When the Federal Bureau of Investigation ("FBI") approached the conspirators . . . the conspirators concocted cover stories and agreed to . . . *obstruct the federal investigation*.") (emphasis added); *id.* at 5 ("Following their March 29, 2022 interviews with the FBI and receipt of grand jury subpoenas, Kakkera, Saeedi, and Bhardwaj took numerous steps to *obstruct the federal investigation into their insider trading*.") (emphasis added); *id.* at 9 ("Bhardwaj, Kakkera, and others then tried to obstruct *the federal investigation* into their insider trading scheme") (emphasis added). "Dismissal is required where the conduct alleged in the indictment as a factual basis for the offense is not actually prohibited by the language of the statute." *Aleynikov*, 737 F. Supp. 2d at 176–77.

The Government sets up a straw man by relying upon *United States v. Triumph Cap. Grp., Inc.*, 260 F. Supp. 2d 470, 474 (D. Conn. 2003). That case concerns Section 1503's so-called "nexus requirement,"—i.e., the requirement "that the act must have a relationship in time, causation, or logic with the judicial proceedings." *United States v. Quattrone*, 441 F.3d 153, 170–71 (2d Cir. 2006) (quoting *Aguilar*, 515 U.S. at 599). *Triumph Capital* held that an indictment need not specifically allege this nexus element. But Mr. Kakkera's motion to dismiss is based upon the Government's failure to allege the necessary intent to obstruct a grand jury investigation—and, indeed, its repeated allegations of an intent (to interfere with a "federal

investigation") that is entirely insufficient.  The nexus requirement is a different and additional matter.  *Triumph Cap. Grp., Inc.*, 260 F. Supp. 2d at 474 ("*In addition to such knowledge and intent*, the Court engrafted a nexus requirement onto the intent element . . .").  *See also United States v. Genao*, 343 F.3d 578, 584–85 (2d Cir. 2003) (describing *Aguilar*'s "nexus" requirement and then stating "*Moreover, the Court concluded that a defendant must have a specific intent to interfere with an actual judicial proceeding*—not just to interfere with a federal investigation.") (emphasis added).[10]

Dismissal of Count Fourteen is also independently appropriate because there is no allegation that Mr. Kakkera ever intended to provide the alleged "fake promissory note" to the grand jury or vouch to the grand jury for its accuracy.  *See United States v. Moon*, 718 F.2d 1210, 1236 (2d Cir.1983) ("There would be no problem . . . had [the government] introduced proof before the petit jury to the effect that Kamiyama had not only produced the questionable documents, *but had also affirmatively vouched for their accuracy.  . . .*"); *United States v. Jespersen*, 65 F.3d 993, 999–1001 (2d Cir. 1995) (affirming conviction upon evidence establishing that Jespersen "descended upon Temerario, who was certain to be called as a grand jury witness, and *implored him to vouchsafe the legitimacy of the Contract and to verify the payments to Temerario by the Jespersens that it recited*.") (emphasis added).[11]

---

[10] The Government will, as a separate matter, be unable to establish *Aguilar*'s nexus requirement at trial.

[11] The Government again erects a straw man by mischaracterizing Mr. Kakkera's argument as depending upon whether "Kakkera in fact provided the fake note to the grand jury."  Gov't Opp. at 19 fn.5.  But the issue is not whether Mr. Kakkera "in fact" provided the note, but rather whether he *intended* to do so, and there is no such allegation in the Indictment.

## VI.   THE GOVERNMENT MUST REVIEW AND PRODUCE *BRADY* AND *GIGLIO* MATERIAL IN THE POSSESSION OF THE SEC.

As demonstrated in Mr. Kakkera's opening brief, the Indictment in this case is the result of a joint investigation conducted by the USAO and the SEC.  The facts supporting this finding include, among other things (1) the numerous joint interviews conducted by the USAO and the SEC; (2) the extensive two-way information sharing between the USAO and the SEC; and (3) the concurrent and coordinated charges by both agencies.  Kakkera Mot. to Compel, at 11-14.  *See United States v. Gupta*, 848 F. Supp. 2d 491, 492-93 (S.D.N.Y. 2012) (Rakoff, J.) ("That separate government agencies having overlapping jurisdiction will cooperate in the factual investigation of the same alleged misconduct makes perfect sense; but that they can then disclaim such cooperation to avoid their respective discovery obligations makes no sense at all."); *United States v. Martoma*, 990 F. Supp. 2d 458, 460 (S.D.N.Y. 2014) (joint investigation standard "involves consideration of the 'degree of cooperation between agencies,' such as their coordination in conducting witness interviews and otherwise investigating the facts of the case") (citing *Gupta*, 848 F. Supp. 2d at 495); *United States v. Prange*, 11 Cr. 10415 (NMG), 2012 WL 3263606, at *1 (D. Mass. Aug. 7, 2012) ("In light of the reasonable inference suggested by the nature of the investigation that the SEC played a role in some aspects of the investigation, the Government shall review and produce the discoverable information possessed by the SEC regarding the confidential witness.").

Although the Government regurgitates a variety of factors it asserts support a finding that the investigations were separate, the case law makes clear that *the most* important factor in making this determination is the *absolute number* and *percentage* of jointly conducted interviews. *Compare Gupta*, 848 F. Supp. 2d at 493–95 (finding that the Government had an obligation to review SEC interview notes and memoranda for *Brady* material, where the SEC and USAO

conducted a "joint investigation" by jointly conducting 44 witness interviews) and *Martoma*, 990

F. Supp. 2d at 461 (finding joint investigation; "During the investigation of Martoma's conduct,

the SEC and the USAO jointly conducted twenty interviews of twelve witnesses.") *with United*

*States v. Collins*, 409 F. Supp. 3d 228, 241 (S.D.N.Y. 2019) (finding investigations separate where

"[w]ith regard to witness interviews, the SEC and the Government both participated in only 16 of

60 interviews") and *Chow*, Kobre Decl. Ex. E, Oral Arg. Tr. at 72-74 (no joint investigation where

only a single witness interview was conducted jointly).   Notably, the Government's carefully

worded Affirmation provides no information about the absolute number or percentage of joint

interviews conducted. *See* Gov't Opp, Ex. B.

The absolute and relative numbers of interviews conducted jointly sets this case apart from

those cited by the Government.   Based upon the limited information provided by the Government,

it appears that, (1) all but two of the witness interviews were jointly conducted by the USAO and

the SEC, excluding the initial FBI approaches conducted on March 29-31, 2022; and (2) the two

agencies jointly conducted no fewer than eleven witness interviews as part of this investigation,

including critical interviews with the two cooperators and Lumentum personnel.   It is likely that

additional information from the Government on this point (which the Government refuses to

provide) would confirm that nearly all the interviews in this case following the initial approaches

were conducted jointly.

These facts support a finding that the USAO and SEC conducted a joint investigation,

requiring the Government to search for and produce any *Brady* and *Giglio* information in the

possession of the SEC.   *See Gupta*, 848 F. Supp. 2d at 492-93; *Martoma*, 990 F. Supp. 2d at 460.

VII.   **THE COURT SHOULD REQUIRE THE GOVERNMENT TO PROVIDE NOTICE UNDER FEDERAL RULE OF EVIDENCE 404(B) NOT LESS THAN 60 DAYS BEFORE TRIAL.**

The Government cites cases for the proposition that it need only provide the notice required under Rule 404(b) some time in advance of trial.  But where, as here, the case is complex, and the admissibility *vel non* of Rule 404(b) evidence will likely have an important impact on the case, courts routinely require the Government to provide more than token notice. *See, e.g.*, *United States* v. *Torres*, No. 05-CR-838 (NGG), 2006 WL 1982750, at *6 (E.D.N.Y. July 13, 2006) ("A court may provide for a longer notice period, especially in the case of a complex trial, in which the 404(b) evidence is critical to the action, and there exists no threat to the safety of prospective witnesses."); *Nachamie*, 91 F. Supp. 2d at 577 ("[A] longer notice period is appropriate [where there is an] absence of any threat to the safety of prospective witnesses and the . . . Rule 404(b) evidence [is important to] this action.") (quoting *United States* v. *Livoti*, 8 F. Supp. 2d 246, 250 (S.D.N.Y. 1998)) (alterations and omissions in original).

Here, there is no credible threat of harm to any witness and the evidence is important to the action. This case is complex, involving two separate and distinct insider trading schemes in two different securities during two different time frames, and the Indictment itself alleges several instances of uncharged conduct, including two loan transactions which the Government alleges were part of an entirely different scheme from the one with which Mr. Kakkera is charged. Accordingly, the Government should be required to provide notice of any evidence it intends to offer at trial pursuant to Rule 404(b) no later than 60 days before trial.

**CONCLUSION**

The Court should grant all of Mr. Kakkera's pretrial motions.

Dated:  June 26, 2023                    Respectfully submitted,

                                         _/s/ Elisha J. Kobre_____
                                         Elisha J. Kobre
                                         BRADLEY ARANT BOULT CUMMINGS LLP
                                         1445 Ross Avenue, Suite 3600
                                         Dallas, Texas 75202
                                         Telephone: 214-257-9785
                                         Facsimile: 214-939-8787
                                         Email: ekobre@bradley.com

                                         *Counsel for Srinivasa Kakkera*